**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | Case No: 25-cv-07201 |
| v. | ) ) | Judge Mary M. Rowland |
| MAUSER PACKAGING SOLUTIONS, | ) ) ) | Magistrate Judge Albert Berry III |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

The Court recommends that Petitioner's Application for an Order to Show Cause [1] be granted, with a modification that the subpoena allow 14 days for compliance.[1]  Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy.  Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.

---

[1] Although a motion to enforce a subpoena is usually a non-dispositive matter that a Magistrate Judge has the authority to decide, proceedings to enforce administrative subpoenas are considered dispositive because ruling on the motion resolves the entire matter before the Court.  *See E.E.O.C. v. Trinity Health Corp.*, 107 F. Supp. 3d 934, 936 (N.D. Ind. 2015); *see also*, *N.L.R.B. v. G. Rabine & Sons, Inc.*, No. 00 C 5965, 2001 WL 1772333, at *3 (N.D. Ill. Sept. 10, 2001) ("This matter is before the Court on Rabine Paving's Objections to the Report and Recommendation filed by Magistrate Judge Nolan. Because Judge Nolan's Report and Recommendation would be dispositive of the entire matter before the Court (that is, whether to enforce the administrative subpoenas)").

**BACKGROUND**

On December 22, 2023, Diane Smason, Acting District Director for the United States Equal Employment Opportunity Commission ("EEOC"), sent a letter to Mauser Packaging Solutions ("Mauser"), informing Mauser that "the EEOC has scheduled an investigation of your organization to determine its compliance under the ADEA [Age Discrimination in Employment Act of 1967] with respect to your organization's recruitment, hiring and placement of individuals at all facilities in the United States during the time period of January 1, 2020, to the present." (Dkt. 4-1.) On February 22, 2024, Commissioner Andrea Lucas of the EEOC filed a Commissioner Charge alleging that Mauser had "denied employment to applicants based on sex, female; national origin, Hispanic; race, Black, and race, White at [eight Mauser locations]," from 2020 through the present.[2] (Dkt. 4-2.) On December 12, 2024, EEOC Investigator Jovan Gathings sent an email to Mauser requesting to perform on-site visits at three Mauser locations in mid-to-late January 2025. (Dkt. 4-4 at 2.) Mauser responded on December 26, 2024, stating that it would not agree to on-site visits because the "request does not contain any information regarding the on-site visit, such as its purpose, what the EEOC intends to do during the visit, and the length of each visit" and that visit would be "disruptive to Mauser's operations and will be intimidating to its workforce." (Dkt. 4-4 at 1.)

The EEOC served a subpoena on February 12, 2025, seeking access to the eight Mauser locations named in the Commissioner Charge on February 20, 2025, and specifying that investigators would "enter each of [Mauser's] facilities identified to inspect and photograph areas frequented by employees, including, but not limited to, production lines, shipping & receiving,

---

[2] Unlike Title VII, EEOC investigations pursuant to the ADEA do not require a charge. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 1653, 114 L. Ed. 2d 26 (1991) ("[T]he EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA 'from any source,' and it has independent authority to investigate age discrimination").

reception areas, break room, restrooms, and human resources." (Dkt. 4-5.) The subpoena further stated that the inspection would be completed by walking tour and may include questioning and/or interviews of employees. (*Id.*) On February 19, 2025, Mauser served a petition to revoke or modify the subpoena pursuant to 29 C.F.R. § 1601.16(b). (Dkt. 18-4.) The EEOC issued a determination on May 7, 2025, denying Mauser's petition. (Dkt. 4-7.) However, in the determination, the EEOC agreed to modify the subpoena to limit the on-site visit to no more than three hours per location and limit the number of interviews at the various locations. (Dkt. 4-7 at 6-7.) Even after the determination and proposed modification, Mauser indicated that it did not intend to comply with the subpoena, (Dkt. 5 at 3), and the EEOC filed this civil action on June 27, 2025, petitioning the Court for an order to show cause. (Dkt. 1.) The issue has been fully briefed and is ripe for disposition.

## **DISCUSSION**

### I.     **The Court Has Jurisdiction Over the Subpoena**

Title VII gives an EEOC Commissioner the power to file an administrative charge both on behalf of an individual victim or "when a Commissioner has reason to think that an employer has engaged in a 'pattern or practice' of discriminatory conduct." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62, 104 S. Ct. 1621, 1628, 80 L. Ed. 2d 41 (1984) (citing 42 U.S.C. § 2000e-6(e)). "After a charge has been filed, the EEOC conducts an investigation of the allegations contained therein," and in obtaining evidence pursuant to that investigation, the EEOC has "the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas." *Id.* at 63. However, "[i]f the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted." *Id.* at 65. Thus, the Supreme

Court has held that "the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *Id.*

The EEOC has promulgated rules and regulations fleshing out what is required for a valid charge brought by a Commissioner; each charge should contain: 1) the full name and contact information of the person making the charge; 2) the full name and contact information of the person against whom the charge is made; 3) a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; 4) if known, the approximate number of employees of the employer; 5) a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency. 29 C.F.R. § 1601.12(a). To satisfy the third requirement – *i.e.*, a clear and concise statement of the facts constituting the alleged unlawful employment practices – "the Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced." *Shell Oil*, 466 U.S. at 73. The Supreme Court has expressly rejected requiring the Commissioner "to specify the persons discriminated against, the manner in which they were injured, and the dates on which the injuries occurred." *Id.* at 70.

Mauser asserts that the charge in this case does not contain a sufficient statement of facts. (Dkt. 18 at 6.) Therefore, because the charge fails to satisfy the requirements of the regulation, the EEOC has not satisfied the "jurisdictional prerequisite" articulated in *Shell Oil* and the Court

does not have jurisdiction to enforce the subpoena at issue. (*Id.*) Notably, Mauser does not cite any cases where a Court held that a similar charge was inadequate.

The Court finds instructive the Seventh Circuit case of *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995). In that case, the EEOC issued a charge alleging that the respondent had violated Title VII and the ADEA by "[f]ailing to recruit and/or hire Asians, Hispanics, and individuals over the age of 40 because of their race, national origin and/or age." *Id*. at 644. When the respondent refused to comply with an administrative subpoena, the EEOC moved to enforce and the district court granted the EEOC's request. *Id*. The respondent appealed, arguing that the subpoena issued pursuant to the charge was invalid because "the Commissioner's charge contains only conclusory allegations of discrimination and does not state 'the categories of employment positions' from which the affected individuals allegedly have been excluded." *Id*. at 646. The Seventh Circuit affirmed the district court's decision, noting that "a charge of discrimination ought not be considered the equivalent of a complaint initiating a lawsuit" and "is the basis for the EEOC's access to relevant information from the employer." *Id*. at 647. Therefore, "[t]he purpose of the charge is not to require the Commissioner to substantiate the charge before the very investigation that ought to produce that result." *Id.*

Here, the Court believes that the charge meets the requirements articulated in *Shell Oil*. The Commissioner has identified "the groups of persons that [she] has reason to believe have been discriminated against," (*i.e.*, women, Hispanic people, white people, and black people), "the methods by which the discrimination may have been effected," (*i.e.*, denying employment to applicants), and "the periods of time in which [she] suspects the discrimination to have been practiced" (*i.e.*, 2020 to present). *See Shell Oil*, 466 U.S. 54. While it is true that the Commissioner's charge failed to include "the categories of employment positions" from which the

affected individuals have been excluded, the Seventh Circuit expressly rejected a similar argument from the respondent in *Quad/Graphics*. *See* 63 F.3d at 646 (affirming district court's enforcement of subpoena where "[s]pecifically, Quad/Graphics' argument is that the Commissioner's charge contains only conclusory allegations of discrimination and does not state 'the categories of employment positions' from which the affected individuals allegedly have been excluded"). Because the charge here was adequate according to Supreme Court and Seventh Circuit precedent, the Court believes the EEOC has met the jurisdictional prerequisite to enforce its subpoena.

## II.    The Subpoena Seeks Relevant Information

The Court believes that the subpoena seeks relevant information. "The Supreme Court in *Shell Oil* articulated a generous standard of relevance for purposes of EEOC subpoenas." *E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011). "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68–69. However, as the Supreme Court noted in *Shell Oil*, Congress has maintained the relevance requirement in the governing statute, "and we must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity." *Id.* at 69.

The subpoena seeks relevant information. The Court agrees with the EEOC that "[o]nsite visits to Respondent's facilities and interviews with current employees allow for a visual inspection of current working conditions and work force, which may in turn inform the EEOC of ongoing discriminatory hiring practices or conditions that might dissuade some populations from working at its facilities." (Dkt. 5 at 8.) For example, if certain locations are disproportionately comprised of one racial group, sex, national origin, or age group, that might tend to prove the

allegations levied in the Commissioner's Charge.  Moreover, interviews with employees may uncover evidence of Mauser's allegedly discriminatory employment practices, as they describe their experiences.  Given the broad definition of relevance, the Court finds that the subpoena seeks to discover relevant information related to the Commissioner's Charge.

The Court rejects Mauser's arguments that the subpoena does not seek relevant information.  First, Mauser claims that the subpoena is overbroad because it "seeks to inspect and photograph areas frequented by employees 'including but not limited to' production lines, shipping and receiving areas, restrooms and Human Resources offices."  (Dkt. 18 at 11.)  Mauser argues that this "gives the EEOC plenary authority to access any room, office, desk drawer, or other area of each facility." (Dkt. 18 at 11.)  The Court disagrees that the subpoena is drafted as broadly as Mauser suggests. On the subpoena, the catch-all phrase "including, but not limited to" is narrowed by the qualifier of "areas frequented by employees". (Dkt. 4-5 at 1.)  This wording and sequencing means that the EEOC cannot go anywhere it pleases.  For example, it is hard to imagine that employees frequent desk drawers.  Also, the Court anticipates that many offices are the province of management and similarly not frequented by employees.  The phrase "including, but not limited to" was added because the EEOC cannot know prior to its inspection all the areas that are frequented by employees and it is appropriate for it to have some flexibility to ensure that it can perform a meaningful on-site inspection.  The Court rejects Mauser's argument and does not believe the subpoena to be overly broad.

Second, Mauser asserts that the inspection will only reveal the employees who are currently employed by Mauser and "cannot possibly be relevant to the EEOC's investigation of Mauser's hiring practices and alleged denial of employment based on applicants' sex, national origin, race, or age."  The Court agrees with the EEOC that "[c]urrent employment conditions and

7

demographics are direct reflections of the impact of Mauer's hiring policies and practices." (Dkt. 20 at 4.) The results of Mauer's hiring activities may be apparent from the composition of the current crop of employees and an on-site visit may lead to relevant information on this front. The Court rejects this argument.

Third, Mauser argues that a visual inspection will have limited utility because the EEOC will not necessarily be able to determine race, gender, national origin, or age by looking at Mauser's employees, and that Mauser's EEO-1 submissions are a better source of the demographic composition of Mauser's employees. (Dkt. 18 at 11-12.) While the Court agrees that visual inspections may not be the most effective way to determine the makeup of Mauser's workforce, the Court does not believe it is totally irrelevant, particularly because the inspection will be supplemented with employee interviews. Furthermore, the EEOC does not need to rely on Mauser's self-reported data and should be allowed to verify that information through on-site visits which include visual inspections and interviews.

Fourth, Mauser maintains that the subpoena is overly broad because it does not provide a time limit or limit the number of interviews the EEOC may conduct. (Dkt. 18 at 12.) The Court rejects this argument as the EEOC has already agreed to modify the inspections and interviews authorized by the subpoena to three hours per site with a cap on the number of interviews they may perform at each site. (Dkt. 4-7 at 6-7.)[3] As such, this argument is moot.

Finally, Mauser argues that the subpoena is overbroad because it allows the EEOC to photograph areas that may expose Mauser's confidential and proprietary information. (Dkt. 18 at 12.) The Seventh Circuit has rejected similar arguments, holding that "confidentiality is no excuse

---

[3] It is not clear whether the EEOC has reneged on its proposed modification. (*See* Dkt. 20 at 6 ("the subpoena is not overly broad and should be enforced in full").) However, the Court believes that the EEOC agreed to modify the subpoena in its prior decision and should be held to that agreement.

for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination." *E.E.O.C. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) (citing 42 U.S.C. § 2000e-8(e)).  The Court follows the holding of the Seventh Circuit and does not believe that confidentiality is a valid reason to prohibit the on-site visit.  For the reasons discussed above, the Court finds that the subpoena seeks relevant information and is not overly broad.

### III.    The Subpoena Is Mostly Not Unduly Burdensome

Mauser argues that the subpoena is also unduly burdensome.  "In determining whether a subpoena ought to be enforced, modified or quashed, the district court also must consider the burdensomeness of compliance." *E.E.O.C. v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002). "Nevertheless, the presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest." *F.T.C. v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980).  "Consequently, a court may modify or exclude portions of a subpoena only if the employer 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.'" *United Air Lines*, 287 F.3d at 653 (quoting *Shaffner*, 626 F.2d at 38).  "What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question." *Id.*

First, Mauser argues that the subpoena is unduly burdensome because it lacks parameters on the amount of time inspections may take or how many interviews the EEOC may conduct, but the Court has already rejected that argument above as EEOC has already agreed to time limits and caps on the number of interviews.  (*See* Dkt. 18 at 13.)  Next, Mauser argues that the subpoena was unduly burdensome because it did not give Mauser enough time to comply with the subpoena. (Dkt. 18 at 14.)  The Court agrees that allowing only eight days to comply (and apparently two

days from when Mauser received the subpoena via United States mail) is insufficient, and the Court recommends that the subpoena be modified to allow 14 days to comply. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (court required to quash or modify a subpoena that "fails to allow a reasonable time to comply"); *see also*, *Malhorta v. CVS Health, Inc.*, No. 24 CV 4769, 2025 WL 3269573, at *6 (N.D. Ill. Jan. 7, 2025) (14 days is the "benchmark" for subpoena compliance). Finally, Mauser contends that the subpoena is unduly burdensome because some employees (particularly ones who live in immigrant communities) may be intimidated by having EEOC officials visit their workplace and interview them. While the Court is sympathetic to this argument, it could be raised in any case involving an on-site investigation of a workplace, which will always be uncomfortable for employees. Also, Mauser cites no case law to support that argument that this hypothetical intimidation is a valid reason to quash or modify a subpoena. The Court rejects this argument.

### IV.    The EEOC Followed Appropriate Enforcement Procedures

Finally, Mauser contends the EEOC failed to follow the steps delineated in the federal regulations before initiating this enforcement action. In particular, 29 C.F.R. § 1601.16(b)(2) states that "[w]ithin eight calendar days after receipt [of a petition to revoke] or as soon as practicable, the General Counsel or Director, as appropriate, shall either grant the petition to revoke or modify in its entirety or make a proposed determination on the petition, stating reasons, and submit the petition and proposed determination to the Commission for its review and final determination." Because Mauser served its petition to revoke on February 19, 2025, and the decision denying the petition did not issue until May 7, 2025, Mauser claims that there is no evidence that the director who issued the subpoena made a proposed determination on the petition and submitted it to the Commission for its review and final determination within eight calendar days or as soon as practicable. (Dkt. 18 at 9.) However, Mauser does not cite any case law holding

10

that failing to perform the required acts within eight calendar days or "as soon as practicable" is grounds to find that a subpoena is unenforceable, or that the EEOC is required to submit evidence demonstrating that it has done so. Nor does the regulation itself support such a finding. The triggering event that allows for enforcement is when "the Commission issues a final determination upholding all or part of the subpoena, and the person does not comply with the subpoena." 29 C.F.R. § 1601.16(d). That has occurred here. Because all of the necessary administrative proceedings have been exhausted, the Court believes the enforcement proceeding is properly before the Court and will not deny the EEOC's petition on this basis.

Mauser also tosses out two inchoate arguments at the end of this section of its brief. First, Mauser "questions the legality and fairness of the EEOC's regulation requiring that the very EEOC District Director who issued the On-site Visit Subpoena determine its lawfulness, when challenged, rather than a neutral, unbiased adjudicator." (Dkt. at 18 at 9.) Mauser does nothing to advance this argument or elaborate on this point; there is no case law supporting this argument cited in the brief. Second, Mauser claims "there is no evidence that the EEOC's Acting General Counsel designated any authority to institute this enforcement proceeding to Trial Attorneys Emma Heo and Kelly Bunch or Assistant Regional Attorney Ethan Cohen." (Dkt. 18 at 9.) Mauser does not explain what evidence the EEOC would need to demonstrate appropriate designation and the regulation Mauser cites does not discuss the requirements to do so. *See* 29 C.F.R. § 1601.16(d) (stating that "the General Counsel or his or her designee may institute proceedings to enforce the subpoena in accordance" with the relevant regulations). "Arguments that are underdeveloped, cursory, and lack supporting authority are waived." *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020). Because Mauser has done nothing to develop or support these theories, the Court believes Mauser has waived them.

**<u>CONCLUSION</u>**

The Court recommends that Petitioner's Application for an Order to Show Cause [1] be granted, provided that the subpoena is modified to allow 14 days for compliance. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.


ENTERED: January 5, 2026

Albert Berry III
United States Magistrate Judge